UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GABRIELLE PASHA,

        Plaintiff,

v.                                                        Case No. 24-cv-0836-bhl

KOHLER CO,

        Defendant.

## ORDER DENYING SUMMARY JUDGMENT FOR PLAINTIFF AND GRANTING SUMMARY JUDGMENT FOR DEFENDANT

      Plaintiff Gabrielle Pasha challenges Defendant Kohler Co.'s decision to terminate her long-term disability insurance benefits under an employee benefit plan governed by the Employee Retirement Income Security Act (ERISA). (ECF No. 1.) Pasha first argues that Kohler breached its fiduciary duty to her as a plan beneficiary by invoking the attorney-client privilege and refusing to supplement the administrative record with six emails between Kohler and its attorney. (ECF No. 26 at 26–30.) Pasha also contends Kohler's claims denial was arbitrary and capricious because Kohler withheld necessary information and applied a "shifting standard" to its interpretation of the material and substantial duties of her occupation, depriving her of the reasonable opportunity for a "full and fair review" of her claim. (*Id.* at 13–19.) Because the record shows that Kohler did not breach its fiduciary duties and its decision-making was not arbitrary and capricious, Pasha's motion for summary judgment will be denied and, pursuant to Federal Rule of Civil Procedure 56(f), summary judgment will be entered for Kohler.[1]

---

[1] Courts generally use summary judgment as the procedural mechanism to resolve ERISA benefits cases, like this one, where review is based on the administrative record, and subject to the arbitrary and capricious standard. *See Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 812 (7th Cir. 2006). Under Federal Rule of Civil Procedure 56(f), a court may grant summary judgment for a nonmovant after giving notice and a reasonable time to respond. As discussed in the Court's Scheduling Order, given the standard of review, the current briefing and record forms the basis for resolving Pasha's claim in its entirety. Accordingly, the Court will enter judgment in Kohler's favor under Rule 56(f).

## BACKGROUND

Gabrielle Pasha began working for Kohler as an Associate Customer Service Representative in August 2021. (ECF No. 22-1 at 60, 91.) In this position, Pasha worked remotely, answering plumbing-related calls from customers, troubleshooting customer problems, providing product information, ordering replacement parts, and documenting her customer interactions. (ECF No. 27 at 4.)

As a Kohler employee, Pasha was covered by an employer-sponsored employee welfare benefit plan ("the Plan") that provided both short-term and long-term disability benefits. (ECF No. 6 ¶7.) Under the Plan, an employee is considered disabled "if, because of [the employee's] injury or illness, [she is] unable to perform all of the material and substantial duties of [her] regular occupation or, solely due to injury or illness, [she is] unable to earn more than 80% of [her] pre-disability base earnings." (ECF No. 22-19 at 419.)

On April 6, 2022, Pasha applied for short-term disability benefits. (ECF No. 27 at 9.) Her application identified several medical conditions, including chronic fatigue syndrome, persistent postural-perceptual dizziness, postural dizziness with presyncope, and postural orthostatic tachycardia syndrome. (ECF No. 26 at 1.) Pasha claimed these conditions caused migraine headaches, dizziness, chest tightness, and weakness and made her unable to perform her job duties. (*Id.* at 2.) Kohler initially approved Pasha's application on April 14, 2022, and granted her short-term disability benefits through April 26, 2022. (ECF No. 27 at 9.) These short-term benefits were then extended several times through September 24, 2022. (*Id.*) After the final extension, in early October 2022, Pasha attempted to return to work, proposing significant accommodations to her schedule and job duties. (ECF No. 22-4 at 190.) Kohler denied her proposal, however, explaining that it could not accommodate all her requests because she worked remotely. (ECF No. 22-4 at 191–92.)

On October 10, 2022, Pasha applied for long-term disability benefits through the Plan. (ECF No. 27 at 9.) She described her job duties in her application as providing customer service related to plumbing products, providing troubleshooting, ordering replacement parts, and documenting her work in software systems. (*Id.* at 10.) In November 2022, Kohler approved her request, and she started receiving long-term disability benefits. (*Id.*) On May 1, 2023, Kohler approved Pasha's long-term disability benefits through June 18, 2023. (*Id.*) In doing so, Kohler indicated that if Pasha could not return to work by the end of that period, she would be required to

provide Kohler with all medical records related to her disability covering the entire period from December 7, 2022, through June 18, 2023. (EFC No. 22-8 at 1402.)

At the end of the extended benefit period, Pasha concluded she was unable to return to work and provided Kohler with her medical records. (ECF No. 27 at 10.) On July 7, 2023, Kohler asked its Occupational Health Nursing Supervisor, Angela Sexton, to review Pasha's records and determine whether long term disability benefits were appropriate. (*Id.*) After completing her review, Sexton issued a report concluding that the record did not support Pasha's total disability claim because Pasha could complete "her job function in a sedentary/light job classification." (ECF No. 22-8 at 1421.) Based on the report, Kohler sent Pasha notice that it was denying her claim. (*Id.* at 1423.) Kohler also provided Pasha with a summary of the appeal process if she chose to challenge the denial. (*Id.*)

Six months later, on February 6, 2024, Pasha notified Kohler that she was appealing her adverse benefit determination. (ECF No. 22-15 at 96–113.) Pasha had previously asked Kohler to extend the deadline for her to submit her appeal materials, explaining that she wanted to include the results of a functional capacity evaluation that she had scheduled for early March 2024. (*Id.* at 88.) Kohler denied her request. (*Id.* at 90–93.)

In evaluating Pasha's appeal, Kohler enlisted a company called Prevea, which performs independent medical reviews, to analyze Pasha's medical records and claim history. (*Id.* at 115.) Prevea assigned Pasha's claim to Dr. Jasmine John. (*Id.* at 114–15.) Kohler forwarded Pasha's appeal materials to Dr. John and she received them on February 15, 2024. (ECF No. 27 at 13.) Kohler advised Dr. John that Pasha "worked as a Customer Service Representative, which was sit down, computer/phone work." (ECF No. 22-15 at 115.)

Dr. John completed her review and provided Kohler with her report on March 15, 2024. (ECF No. 27 at 13.) She reported agreement with Sexton's earlier report finding a lack of medical support for Pasha's disability and for Pasha's claimed inability to work in a sedentary capacity. (ECF No. 22-17 at 938.) Dr. John noted that some descriptions of functional limitations from treating providers struck her as inconsistent, that Pasha was able to communicate with providers and ask for corrections in her medical records, and complete physical therapy exercises. (*Id.* at 940.) Overall, Dr. John stated that, in her opinion, the medical documentation she reviewed did not support Pasha's claim for total disability and her "inability to do her primary job duties." (*Id.* at 941.)

Pasha underwent her previously scheduled functional capacity evaluation on March 5 and 6, 2024. (*Id.* at 925–37.) After receiving the results of her evaluation, Pasha supplemented her appeal submissions with a copy of the functional capacity evaluation report. (*Id.* at 942–43.) On March 19, 2024, Kohler received and immediately forwarded the report to Dr. John for her review. (ECF No. 27 at 14.) Dr. John then provided an additional opinion specifically rejecting the conclusions in the functional capacity evaluation, concluding that the report included tasks that were not necessary to, or representative of, Pasha's duties at Kohler. (*Id.*) Kohler provided Dr. John's opinion (including her response to Pasha's functional capacity evaluation) to Pasha on April 18, 2024. (ECF No. 26 at 7.)

Pasha did not simply accept Dr. John's conclusions. She asked Kohler to provide copies of the documentation that Dr. John had cited in her report. (ECF No. 22-17 at 955.) Pasha also asked that Kohler identify what it considered to be the material and substantial duties of her employment. (*Id.*) She also demanded communications between Kohler and its outside counsel, arguing she was entitled to receive those communications pursuant to the fiduciary exception to the attorney-client privilege. (ECF No. 26 at 7–8.)

The parties continued to correspond regarding documentation and Kohler's understanding of Pasha's job duties. (*Id.* at 8–9.) On May 2, 2024, Kohler provided Pasha with a job description prepared in 2024 for the "Associate Customer Service Representative" position, (ECF 22-19 at 383–84), but refused to produce the requested attorney-client email communications, (*id.* at 386–87). Ultimately, on May 5, 2024, Kohler sent a formal determination letter denying Pasha's request for further long-term disability benefits. (*Id.* at 413.) This litigation followed.

## LEGAL STANDARD

Pasha invokes 29 U.S.C. §1132(a)(1)(B) to challenge Kohler's denial of her claim for Plan benefits and now seeks summary judgment on her claims. (ECF No. 24.) This Court's review of Kohler's decision is limited. Under ERISA, when a benefit plan grants a plan administrator discretion, the Court applies a deferential "arbitrary and capricious" standard of review to challenges over an administrator's decisions on benefit eligibility and on the meaning of plan terms. *See Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010). The record confirms that the Plan gives Kohler discretionary authority to determine eligibility and construe terms, (ECF No. 22-1 at 4), and the parties therefore agree that the arbitrary and capricious standard of review applies. (ECF No. 26 at 12; ECF No. 27 at 12–13.)

Under this deferential standard, Kohler's decision will be upheld unless it abused its discretion, and its determination was "not just clearly incorrect but downright unreasonable." *Olander v. Bucyrus-Erie Co.*, 187 F.3d 599, 607 (7th Cir. 1999) (citing *Fuller v. CBT Corp.*, 905 F.2d 1055 (7th Cir. 1990). Excluding special circumstances, like fraud or bad faith, an administrator's decision will not be deemed arbitrary and capricious "so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision." *Trombetta v. Cragin Fed. Bank for Sav. Emp. Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996).

While deferential, the arbitrary and capricious standard is not a "rubber stamp." *Holmstrom*, 615 F.3d at 766. An administrator's decision must have reasoning in the record to support it. *Id.* (citing *Hackett v. Xerox Corp. Long–Term Disability Income Plan*, 315 F.3d 771, 774–75 (7th Cir. 2003). Moreover, ERISA claimants receive additional procedural safeguards. The plan administrator must afford the claimant an opportunity for a "full and fair review" and communicate specific reasons for any denial of benefits. *Tate v. Long Term Disability Plan for Salaried Emps. of Champion Int'l Corp. No. 506*, 545 F.3d 555, 559 (7th Cir. 2008). In evaluating these issues, courts may also consider the inherent conflict of interest that exists when the administrator both determines what benefits shall be paid, and the obligation to pay them. *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 860–61 (7th Cir. 2009). Courts are limited to reviewing only the evidence before the administrator when it made its decision. *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 462 (7th Cir. 2001).

## ANALYSIS

**I.    Kohler Did Not Violate Its Fiduciary Duties by Withholding Emails Based on the Attorney-Client Privilege.**

Pasha's first argument is that Kohler violated its fiduciary duties to her, as a plan beneficiary, by failing to produce email communications with its counsel related to the administration of her claim. (ECF No. 26 at 26.) This argument largely repeats positions that the Court rejected in an earlier discovery dispute. On December 11, 2024, Pasha filed a motion to compel Kohler to supplement the administrative record with six specific emails exchanged between Kohler and its legal counsel. (ECF No. 14.) Pasha argued that Kohler improperly withheld these emails because they "clearly relate[d] to the administration of Plaintiff's claim" and were therefore not subject to the attorney-client privilege. (*Id.* at 3–4.)

In denying Pasha's motion, the Court explained the limited scope of discovery in a lawsuit challenging an ERISA plan administrator's denial of benefits where the arbitrary and capricious standard of review applies. (ECF No. 17.) In this scenario, the scope of discovery does not generally extend beyond the administrative record. (*Id.* at 1 (citing *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981–82 (7th Cir. 1999)).) The Court acknowledged that, even where the arbitrary and capricious standard applies, the record may be expanded if a claimant "makes specific factual allegations of misconduct or bias in a plan administrator's review procedures." (*Id.* at 2 (quoting *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 814–15 (7th Cir. 2006)).) But this limited exception applies only after a claimant identifies a "specific conflict of interest or instance of misconduct" and makes "a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination." (*Id.* (quoting *Semien* 436 F.3d at 815).)

In her prior motion to compel, Pasha asserted she was entitled to expand the record through the fiduciary exception to the attorney-client privilege. (ECF No. 14 at 3–4.) The Court rejected Pasha's argument because she "offered nothing beyond conjecture and speculation for why the withheld emails are relevant" which fell "short of the good cause . . . required . . . to obtain such discovery." (ECF No. 17 at 3.) The Court concluded Pasha had not made a "prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination" and denied her motion. (*Id.* at 2 (citing *Semien*, 436 F.3d at 815).)

Pasha has not shown that the fiduciary exception applies. Under the fiduciary exception, "a fiduciary of an ERISA plan 'must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan.'" *Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 787 (7th Cir. 2005) (quoting *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997)). The fiduciary exception "is premised on the theory that the attorney-client privilege should not be used as a shield to prevent disclosure of information relevant to an alleged breach of fiduciary duty." *Id.* (citing *Harper-Wyman Co. v. Conn. Gen. Life Ins. Co.*, No. 86 C 9595, 1991 WL 62510 (N.D. Ill. Apr. 17, 1991)).

Determining whether a particular communication falls within the fiduciary exception "requires close examination of the circumstances[,]" specifically whether "the legal advice to the plan fiduciary can be considered in anticipation of litigation, as opposed to advice obtained as part of the fiduciary's ordinary administration of the plan." *Tatum v. R.J. Reynolds Tobacco Co.*, 247

F.R.D. 488, 497 (M.D.N.C. 2008). When the interests of a plan administrator and a beneficiary have diverged, and the fiduciary is no longer seeking advice on the decision to be made, but instead "seeks legal advice for its own protection against plan beneficiaries", those communications are protected by the attorney-client privilege and not subject to disclosure under the fiduciary exception. *Id.* at 498. "[O]nce there is a divergence of interest and a threat of litigation [it is] warranted for the fiduciary to obtain confidential legal advice and assert attorney-client privilege on the matter against the beneficiary." *Id.* at 497 (citing *U.S. v. Mett*, 178 F.3d 1058, 1063–64 (9th Cir 1999); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 645 (5th Cir. 1992); *Geissal v. Moore Med. Corp.*, 192 F.R.D. 620, 624–27 (E.D. Mo. 2000)). There is not a clear "pre-decisional/post-decisional" line; instead, courts undertake a fact specific inquiry into the context and content of the disputed communications, looking for specific threats of litigation and divergence of interests prior to the plan administration's decision to deny benefits. *Tatum*, 247 F.R.D. at 498 (discussing *Geissal*, 192 F.R.D. at 625–26); *see also Mett*, 178 F.3d at 1064–66.

Kohler listed six emails involving outside counsel as protected by the attorney client-privilege on its privilege log. (ECF No. 13, ¶4; ECF No. 26 at 27–28.) Pasha notes that the privilege log specifies the documents concern "the merits of Ms. Pasha's appeal" and "the contents of the final decision letter." (ECF No. 26 at 27–28.) Pasha argues this indicates that the correspondence constitutes new or additional evidence "considered, relied upon, or generated by the plan, insurer or other person making the benefit direction (or at the direction of the plan, insurer or such other person) in connection with the claim." (*Id.* at 19–20 (quoting 29 C.F.R §2560.503-1(h)(4)(i)).) The circumstances Pasha cites do not change the Court's prior ruling. The communications at issue are akin to those in *Tatum*, where the plan administrator's challenged decision was made after the plaintiff had stated he had retained a lawyer, that he would "probably have his lawyer submit a demand letter," and was considering a "class action lawsuit." 247 F.R.D. at 498–99. By the time Kohler sought legal advice through the emails at issue here, the parties' interests had already diverged, as they had in *Tatum*. This places the communications squarely within the attorney-client privilege.

Similarly, in *Carr v. Anheuser-Busch Companies, Inc.*, a claimant appealed a denial of severance benefits and sought the production of emails related to the "substantive merits" of the plaintiff's individual claim and the content of the final decision letter denying his severance benefits. 791 F.Supp.2d 672, 677 (E.D. Mo. 2011). The court rejected plaintiff's request, holding

that the emails were not subject to disclosure under the fiduciary exception because, by the time they were sent, the "plaintiff's interest had become sufficiently adverse to that of the plan administrator's" and a "final decision had effectively been made and plaintiff's only recourse . . . was litigation." *Id.* Here, the timing of the emails is similar to that of the emails at issue in *Carr*: they were sent soon before the issue of a final decision on the appeal of a denial of benefits. By that point, Pasha was already represented, and the parties' positions had diverged. Thus, the fiduciary exception to the attorney client privilege does not apply to these six emails.

II. **Kohler's Denial of Pasha's Disability Claim Was Not Arbitrary and Capricious.**

Pasha's remaining arguments challenge Kohler's claim denial as arbitrary and capricious. Under this standard, Kohler's decision as plan administrator will be upheld if there are reasons to support its determination in the administrative record, specific reasons for the determination were communicated to Pasha, and Pasha was afforded an opportunity for full and fair review. *See Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009). Pasha does not assert that Kohler failed to provide reasons in the administrative record. Nor does she claim that Kohler failed to communicate those reasons to her. Instead, she asserts that Kohler failed to provide her an opportunity for a "full and fair review" in two ways: by applying a shifting target of disability and by failing to provide new and additional information as required under 29 C.F.R. §2560.503-1(h)(4)(i). As explained below, neither argument supports this Court's interference with the plan administrator's decision.

A. **Kohler Did Not Apply an Impermissibly Shifting Standard of Disability.**

Pasha asserts that Kohler "moved the target" by applying a shifting standard of disability throughout the administration of Pasha's claim without reasonable explanation and thus deprived her of an opportunity for a full and fair review of her claim. (ECF No. 26 at 14.) She argues that Kohler did not apply a consistent and sufficiently accurate understanding of her material and substantial job duties, as required by the Plan's language defining disability. (*Id.* at 13–19.) By continuing to move the goalposts, Pasha claims, Kohler denied her a full and fair review of her long-term disability claim.

The Seventh Circuit has identified several "core requirements" for a full and fair review. These include "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Militello v.*

*Central States, Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 690 (7th Cir. 2004) (quoting *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992). Typically, a plan administrator's substantial compliance with procedural requirements is sufficient to afford a claimant an opportunity for full and fair review. *Halpin*, 962 F.2d at 690.

Pasha contends that Kohler used a changing description of her job duties, inconsistently described the Plan's requirements, and relied on a medical review that improperly dismissed the results of her functional capacity evaluation, and that these failures effectively denied her the ability to present her position in a full and fair way. The Court rejects these arguments.

**1. Kohler Used a Reasonably Consistent Description of Pasha's Job Duties Throughout the Administration of her Claim.**

As an initial matter, the Plan does not itself define an employee's "material and substantial duties." Nor does it define the term "regular occupation." (ECF No. 27 at 20.) Both are general terms, and the Plan grants Kohler, as plan administrator, the discretion to "determine eligibility for benefits under the plan and to construe and interpret the terms of the plan." (ECF No. 22-1 at 4.) Kohler thus insists its decision should be affirmed, and Pasha's challenge rejected, because the record shows that Kohler considered Pasha's job duties accurately, did not "move the target," and any minor differences between the Plan language and the wording Dr. John used in her report do not indicate any meaningful shift in what was considered or required. (ECF No. 27 at 20–24.)

Kohler is correct that the Plan instills in the administrator authority to define plan terms. (*See* ECF No. 22-19 at 429.) But this does not end the matter; the Seventh Circuit has confirmed that an administrator's discretion remains limited by the plain language of a plan. *Hess*, 274 F.3d at 461. And when a reviewer fails to make a reasonable inquiry into the actual requirements of the claimant's occupation, the resulting review can be arbitrary and capricious. *See Kirkpatrick v. Liberty Mut. Grp. Inc.,* 856 F.Supp.2d 977, 993 (S.D. Ind. 2012). In *Kirkpatrick*, an ERISA plan defined disability as "the inability to perform all the material and substantial duties of his or her Own Job at his or her pre-disability regular schedule because of injury or sickness." *Id.* at 993. The court found the plan administrator's extremely sparse description of the claimant's work duties as "sed[entary] job, right/left handed" was insufficient and could not support a decision to deny benefits. The court also faulted the administrator's description because it did not "illuminat[e] the 'material and substantial' duties" of the claimant. *Id.* The court further emphasized that the

claimant's medical records were considered in a suspiciously uneven way during her administrative appeal. *Id.* at 996–98.

Kohler's handling of Pasha's claim is different than the flawed approach at issue in *Kirkpatrick*. The record confirms that Pasha described her job duties in her initial application for long-term disability benefits. (ECF No. 22-4 at 196–97.) During the first review requested by Kohler, Registered Nurses Sexton and Kuh Smith were additionally told that Pasha worked as a "Customer Service Representative" and were asked whether her medical records and claim documents supported total disability or "the ability to work in a sedentary/light job classification." (ECF No. 22-8 at 1422.) As described in their response, they reviewed Pasha's earlier disability claim form, medical records, and various "Work Slips" provided to Kohler. (*Id.* at 1420.) While the records they reviewed were not a single, extremely detailed job description, they did, when reviewed in total, provide sufficient information to allow the nurses to piece together Pasha's duties—working in customer service, remotely, and primarily using a phone and computer.

Similarly, Dr. John did not receive a formal job description, but her reports also reference descriptions of Pasha's typical work duties that are similar to the description Pasha gave in her initial long-term disability benefit application. (*Compare* ECF No. 22-17 at 938–42 *with* ECF No. 22-4 at 196–97 ("[T]he work restriction provided by her PCP makes it clear that her job entails answering phones, communicating and completing assignments via email/electronic means.") ("Remote call center position providing customer service. Receive plumbing related calls, retrieve product information, provide troubleshooting. . . order replacement parts, complete documentation in software systems.").) Dr. John's opinion begins by noting that she is looking for objective medical evidence, and therefore excluding reports of symptoms, diagnoses, or medical opinions that are not supported by some objective evidence. (ECF No. 22-17 at 938.) Next, she describes Pasha's job duties:

> Pasha's attorney argued that there is no job description. According to exhibit A, she was working as an associate customer service representative and the position has a remote working model, meaning she can control her external work environment to prevent most of her triggers. According to exhibit L, page 1347, the work restriction provided by her PCP makes it clear that her job entails answering phones, communicating and completing assignments via email/electronic means. Therefore, her job only requires her to exert minimal physical force, and most of her time is spent sitting with minimal changes in position. . . she works in a sedentary/light job classification that is primarily sitting and in an environment that she has full control over.

(*Id.*)  Across multiple sources of information, the understanding of Pasha's main job duties is consistent: answering phone inquiries, providing guidance on plumbing products, troubleshooting, documenting interactions, and ordering replacement parts, all while working remotely, but during scheduled working hours.  (*Id.*; ECF No. 22-4 at 196; ECF No. 22-19 at 383–84.)

In the end, while Pasha criticizes Dr. John's conclusion and notes that she does not focus on the most relevant conditions or address more deeply the functional differences between different tasks related to Pasha's job, the record confirms that Dr. John engaged with Pasha's treatment history, her relevant diagnoses, and developed a description of her job duties that went beyond "sedentary, right/left handed." *Kirkpatrick,* 856 F.Supp.2d. at 993.  Specifically, she noted the typical tasks Pasha would perform, and this level of detail is sufficient to show that Dr. John (and Pasha) both understood Pasha's job duties similarly throughout the claims process.  Given the discretion the Plan instills in the plan administrator's decision-making, Pasha has not overcome the high bar for challenging that decision.

Pasha also complains that while the Plan language refers to "material and substantial job duties," Dr. John used a different formulation, referring to her "primary job duties."  (*See* ECF Nos. 26 at 13; 22-17 at 938.)  This minor wording variation does not demonstrate that Pasha was deprived of a full and fair hearing.  The difference between what Dr. John meant by "primary job duties," and what the plan administrator considered "material and substantial duties" appears slight; the actual named tasks reflect the same type of work.

2. **Kohler's Reliance on Dr. John's Addendum to her Opinion on Pasha's Disability Eligibility Was Not Arbitrary and Capricious.**

Pasha argues that Kohler's decision was arbitrary and capricious because it was made partly in reliance on Dr. John's opinion, and that opinion improperly rejected the results of Pasha's functional capacity evaluation.  (ECF No. 26 at 16.)  She cites *Holmstrom*, in which the Seventh Circuit held a plan administrator had improperly rejected a similar evaluation after finding the evaluation did not contain "raw data" or "algorithms for scoring functionality[.]"  615 F.3d at 771–72.  The Court of Appeals held the rejection improper because the plan administrator had not previously communicated this "raw data" requirement and because the plan administrator had previously and inconsistently accepted an earlier examination and was unable to describe why the two were treated differently.  *Id.*

Dr. John's rejection of Pasha's functional capacity evaluation is different than the rejection found improper in *Holmstron*. Dr. John did not reject Pasha's evaluation based on an undisclosed data requirement, but rather on the merits, because she disagreed with the focus and scope of the testing. (ECF No. 22-17 at 942.) While not elaborate, Dr. John's amended opinion explains that "all the tasks (except for sitting) that she was asked to do on the [functional capacity evaluation] do not pertain to her job. Those tasks in the [functional capacity evaluation] require her to exert more force that [sic] what is necessary for her to do her job." (*Id.* at 942.) Thus, unlike in *Holmstrom*, the record shows that Dr. John, as reviewing physician, rejected the evaluation's conclusions because she disagreed with its analysis and its probative value. Pasha has not shown Dr. John adopted a new, undisclosed criteria to reject the evaluation or that Dr. John held a different evaluation to a lesser standard.

Nor was Dr. John's rejection of the evaluation on the merits an improper refusal to consider new evidence. ERISA plan administrators often make decisions based on conflicting evidence or opinions; this question of judgment is also reviewed under the arbitrary and capricious standard. *Sieg v. Hartford Life & Accident Ins. Co.*, 597 F.Supp.3d 1287, 1297 (E.D. Wis. 2022). Here, the plan administrator received conflicting opinions regarding Pasha's ability to work for a full day in a sedentary capacity as a customer sales representative. Because the decision to deny benefits was supported by some rational evidence in the administrative record, the plan administrator did not act arbitrarily or capriciously when it denied Pasha's claim for long term disability benefits.

### 3. Kohler's Decision to Reverse Its Earlier Grant of Benefits Was Not Arbitrary and Capricious.

Pasha also argues that Kohler acted arbitrarily and capriciously by reversing its prior determination granting her disability benefits. (ECF No. 26 at 15.) She complains that Kohler previously concluded that she qualified for long-term disability benefits based on the same evidence that it later used to deny her claim. (*Id.* at 15.) This argument fails based on established Seventh Circuit law. The Court of Appeals long ago recognized that plan administrators can change their minds and reevaluate evidence in support of a claim. While a prior award of benefits is a factor to consider, an administrator's reversal of a claim decision does not create a presumption that the later decision to discontinue benefits is arbitrary and capricious. *Leger v. Trib. Co. Long Term Disability Ben. Plan*, 557 F.3d 823, 832 (7th Cir. 2009). A plan administrator can seek out new evidence and consider new information. *Holmstrom*, 615 F.3d at 767. Here, Kohler changed

its mind and reversed its previous grant of long-term disability benefits after an outside review of Pasha's medical records.

### B. Kohler Did Not Deprive Pasha of a Reasonable Opportunity for a Full and Fair Review of Her Claim Through the Timing of Its Disclosures.

Pasha next complains about the timing of certain of Kohler's disclosures to her. First, she contends that Kohler prejudiced her appeal by delaying in providing her Dr. John's opinions. (ECF No. 26 at 22.) Second, she asserts that Kohler's May 2, 2024, disclosure of an updated description of her job duties, only three days before its final determination of her claim, undermined her ability to respond to the plan administrator's understanding of the demands of her position. (*Id.* at 24.)

Under 29 C.F.R. §2560.503-1(h)(4)(i), before a plan can issue an adverse benefit determination on review of a disability benefit claim, the plan administrator must provide claimants "any new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination (or at the direction of the plan, insurer, or such other person) in connection with the claim." This new "evidence must be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided[.]" *Id.* The circumstances of the particular case determine what is a reasonable opportunity to respond to this information. *Zall v. Std. Ins. Co.*, 58 F.4th 284, 294–95 (7th Cir. 2023).

In *Zall*, a reviewing physician disagreed with a claimant's treating providers as to the significance of the claimant's EMG and MRI reports, which had been taken six years before. *Id.* at 297. The reviewing physician also flagged the age of the claimant's test results as a problem. *Id.* The claimant did not learn of the report until nine days before his plan administrator denied his appeal. *Id.* at 295. And the claimant did not receive a copy of the report at that time; he did not receive one until his attorney requested it, well after the plan administrator's review deadline. *Id.* at 297. The Seventh Circuit held that because the claimant was deprived of the chance to review the report's contents, and potentially respond by procuring new test results, the claimant was prejudiced by the delay. *Id.*

The circumstances and chronology here are materially different than those at issue in *Zall*. With respect to Pasha's complaint about the timing of her receipt of Dr. John's opinions, the record does not support the conclusion that Kohler improperly delayed production of the opinions or that the delay deprived Pasha of a full and fair opportunity for review. Dr. John provided an initial

report to Kohler on March 15, 2024. (ECF No. 22-17 at 938.) Kohler then received Pasha's functional capacity evaluation results four days later, on March 19, 2024, and forwarded them to Dr. John on the same day. (*Id.* at 962–74) (contents of functional capacity evaluation). Dr. John responded immediately, also on March 19, 2024. Kohler forwarded Dr. John's opinions to Pasha about one month later, on April 18, 2024. (ECF No. 26 at 22.) Kohler issued its final determination a further eighteen days later. (*Id.* at 23.)

These circumstances do not show Kohler acted unreasonably or that Pasha was prejudiced in responding. Dr. John's report is only four pages long, (ECF No. 22-17 at 938–41), and her addendum following the receipt of the functional capacity evaluation results is a one paragraph email. (*Id.* at 942.) Both were provided to Pasha promptly and neither the report nor the follow-up required months to digest. Moreover, unlike the report in *Zall*, Kohler disclosed Dr. John's report before the final determination date. (ECF No. 26 at 22.) And, again unlike the *Zall* report, Dr. John's report discusses the absence of test results or evidence supporting Pasha's claim for disability benefits; it does not announce her disagreement about the significance of an older test result, or concern about the lack of more recent test results. This difference matters; in *Zall*, the nine-day disclosure of the existence, but not the content, of a key report was prejudicial to the claimant. 58 F.4th at 297. The plaintiff in *Zall* was prejudiced by the delayed disclosure because he could not respond to a reviewing doctor's objections about old scans by obtaining new imaging, or by having a treating provider reiterate their interpretation of his scans. *Id.* Here, Kohler disclosed Dr. John's report far earlier and actually provided Pasha with a copy of the report. Pasha has not shown that the delay in disclosing John's opinions prejudiced her.

Similarly, the delay in providing Pasha the specific 2024 job description provided to Dr. John did not deprive Pasha of a full and fair opportunity for review. The formal job description, and earlier descriptions of Pasha's work duties available to Dr. John, and referenced by Dr. John in her opinion, are all substantially similar. The formal job description that Kohler provided Pasha on May 2, 2024, references her duties as "provid[ing] world-class customer delight during telephone interactions while troubleshooting, investigating, and resolving customer inquiries about Kohler and Sterling products." (ECF No. 22-19 at 383.) While the language differs, the description parallels Pasha's own description of her job duties in her long-term disability benefits application. (*See* ECF No. 22-4 at 196 ("Remote call center position providing customer service. Receive plumbing related calls, retrieve product information, provide troubleshooting. . . order

replacement parts, complete documentation in software systems."); ECF No. 22-19 at 383 ("assist customers with . . . plumbing product support including installation and troubleshooting, pre-sale questions, and order placement . . . troubleshooting, investigating, and resolving customer inquiries. . .").) The 2024 job description does include more precise requirements, including a requirement that employees "work during their assigned shift time. . . between the hours of 8:00 am and 5:00 pm." (ECF 22-19 at 384.) Both Pasha's earlier description and Kohler's May 2nd description note the need to answer complicated problems, in a timely manner, and document work using software systems. (ECF Nos. 22-4 at 196; 22-19 at 383–84.) Because the substance of what is being considered appears very similar, Pasha cannot show that she was prejudiced by receiving this formal job description only a few days before a final decision was issued. As discussed above, the facts of *Zall* involved a more significant document, that was not actually disclosed until after the plan administrator issued its final decision. 58 F.4th at 295–97.

## CONCLUSION

Kohler provided Pasha an opportunity for a full and fair review of her long-term benefits denial, and its decision was not arbitrary and capricious.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 24, is **DENIED**.

**IT IS FURTHER ORDERED** that Summary Judgment is **GRANTED** for Defendant, pursuant to Federal Rule of Civil Procedure 56(f). The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on October 7, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge